1   Robert B. Gerard, Esq.
    Nevada State Bar No.:  005323
2   Lawrence T. Osuch, Esq.
    Nevada State Bar No.:  006771
3   **GERARD & OSUCH, LLP**
    2840 South Jones Boulevard
4   Building D, Suite 4
    Las Vegas, Nevada 89146
5   Telephone:     (702) 251-0093
    Facsimile:     (702) 251-0094
6
    David R. Markham
7   California State Bar No.: 071814
    James Treglio
8   California State Bar No.: 228077
    **CLARK & MARKHAM, LLP**
9   401 West A St. Suite 2200
    San Diego, California 92101
10  Telephone:     (619) 239-1321
    Facsimile:     (619) 239-5888
11
    **UNITED EMPLOYEES LAW GROUP**
12  Walter Haines, Esq. (CSB No. 71075)
    65 Pine Ave, #312
13  Long Beach, CA 90802
    Telephone: (877) 696-8378
14  Facsimile: (562) 256-1006

15  *Attorneys for Plaintiffs*

16                    **UNITED STATES DISTRICT COURT**

17                          **DISTRICT OF NEVADA**

18  DONALD ANDREAS, an individual;        )  Case No. 3:07-CV-00253-LRH-RAM
    JERRY T. KEEFHAVER JR., an            )
19  individual; CHARLES BONECK, an        )  **CLASS ACTION**
    individual; WILLIAM HART, an          )
20  individual; KEN BECKER, an individual; )  **PLAINTIFFS DONALD ANDREAS,**
    on behalf of themselves, and on behalf of )  **JERRY T. KEEFHAVER, CHARLES**
21  all others similarly situated,        )  **BONECK, WILLIAM HART, AND KEN**
                                          )  **BECKER'S NOTICE OF MOTION AND**
22        Plaintiffs,                     )  **MOTION FOR CLASS CERTIFICATION,**
                                          )  **MEMORANDUM OF POINTS AND**
23        vs.                             )  **AUTHORITIES**
                                          )
24  LOWE'S HIW, INC., a Washington        )  **Hearing**
    Corporation authorized to do business in )  Date:          TO BE SET BY THE
25  the state of Nevada, and DOES 1 through )                 COURT AS
    100, Inclusive,                       )                 NECESSARY
26                                        )  Judge:         Hon. Larry R. Hicks
          Defendants.                     )
27  _____      )

28

                                    **1**

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Notice is hereby given that plaintiffs Donald Andreas, Jerry T. Keefhaver, Jr., Charles Boneck, William Hart and Ken Becker hereby move for an order certifying this action to proceed as a class action and ordering notice be given by U.S. Mail to potential class members. This motion to certify is made pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP). Argument on this motion will be heard pursuant to an Order by the Court.

By this motion, plaintiffs Donald Andreas, Jerry T. Keefhaver, Jr., Charles Boneck, William Hart and Ken Becker seek to certify the following defined class:

> 1) All persons employed by Lowe's HIW, Inc., with the job title of "Specialists" from March 17, 2004 to March 31, 2006, who were paid according to Lowe's HIW, Inc.'s "Salary Plus Overtime Program," and were not paid one and a half times their hourly rate for hours worked in excess of forty hours in a work week.

> 2) All persons employed by Lowe's HIW, Inc., with the job title of "Loss Prevention & Safety Manager" who worked in excess of forty (40) hours in a work week in the State of California at any time from March 17, 2004 to the present who were not paid overtime compensation for those excess hours.

> 3) All persons employed by Lowe's HIW, Inc., with the job title of "Zone Manager" who worked in excess of forty (40) hours in a work week in the State of California at any time from March 17, 2004 to the present who were not paid overtime compensation for those excess hours.

The motion should be granted as the proposed class meets all the requirements for certification under Rule 23 including (i) the class representative's claims are typical of those of the other class members; (ii) the class is so numerous it would be impracticable to bring them all before the court; (iii) common questions of law and fact predominate; (iv) plaintiff and class counsel will adequately represent the class; and (v) a class action is superior to other methods for the fair and adequate resolution of the claims raised by the class under the California Labor Code and California Business & Professions Code section 17200.

///

///

///

///

///

///

1    This motion is based upon this Notice, the accompanying Memorandum of Points and

2    Authorities, the Declarations of Donald Andreas, Jerry T. Keefhaver, Jr., Charles Boneck,

3    William Hart and Ken Becker James M. Treglio, David R. Markham, the Reply Memorandum

4    to be filed in response to any opposition to this motion, and upon any additional evidence

5    accepted by the Court in consideration of this motion.

6         Dated: January 30, 2008                    **CLARK & MARKHAM LLP**

7

8                                                     By:_____

9                                                          David R. Markham, Esq.,
                                                          Attorney for Plaintiffs Donald Andreas,
                                                          Jerry T. Keefhaver, Jr., Charles Boneck,
10                                                        William Hart and Ken Becker

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO          Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>TABLE OF CONTENTS</u>

2 NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3 MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4 I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 II.    APPLICABLE LAW TO CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . 4

6 III.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7        A.     SPO Subclass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8        B.     LPS Manager Subclass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9        C.     Zone Manager Subclass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 IV.    SUMMARY OF OVERTIME EXEMPTIONS UNDER NEVADA LAW  . . . . . . . . 11

11 V.     THE CLASS MEETS ALL THE REQUISITES FOR CERTIFICATION UNDER
         FRCP RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
12
         A.     SUMMARY OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
13
         B.     STEP ONE: RULE 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
14
               1.     <u>The Class is so Numerous That Individual Adjudication is</u>
15                    <u>Impractical</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16             2.     <u>The Proposed Class Representative will Adequately Represent</u>
                     <u>the Class</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
17
               3.     <u>The Proposed Class Representative's Claim Is Typical of That of the</u>
18                    <u>Class</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19             4.     <u>Common Questions of Law Exist Between Plaintiff and the Class</u> . . . 15

20       C.     STEP TWO: RULE 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

21             1.     <u>Class Adjudication Is Superior To All Other Forms</u> . . . . . . . . . . . . . 18

22             2.     <u>Issues Common To The Class Predominate Over Individual Issues</u> . . 19

23 VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES
### Federal Cases

*Amchem Products, Inc. v. Windsor*
   521 U.S. 591, 614 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Arnold v. United Artists Theatre Circuit, Inc.,*
   158 F.R.D. 439, 448 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blackie v. Barrack,*
   524 F.2d 891, 901 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*California Rural Legal Assistance v. Legal Services Corp.,*
   917 F.2d 1171, 1175 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Chavez v. IBP, Inc.*
   2002 WL 31662102, 4 (E.D. Wash.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Consolidated Rail Corp. v. Town of Hyde Park*
   47 F.3D 473, 484 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Corning Glass Works v. Brennan*
   417 U.S. 188, 196-197 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*General Tel. Co. of Southwest v. Falcon,*
   457 U.S. 147, 156 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*German v. Federal Home Loan Mortg. Corp.*
   885 F.Supp. 537, 552 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanon v. Dataproducts Corp.*
   976 F.2d 497, 508 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hudson v. Chicago Teachers Union*
   922 F.2d 1306, 1317 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454, 462 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re American Medical Systems, Inc.*
   75 F.3d 1069, 1080 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Katz v. Carte Blanche Corp*
   53 F.R.D. 539, 543 (W.D. Penn. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Krzesniak v. Cendant Corp.*
   2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*
   2000 WL 1774091, 7 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

*Miller v. Mackey International, Inc.,*
452 F.2d 424 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullen v. Treasure Chest Casino, LLC,*
186 F.3d 620, 627 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Romero v. Producer's Dairy Foods, Inc.*
235 F.R.D. 474 (E.D.Cal.,2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*Rosario v. Livaditis,*
963 F.2d 1013, 1017-1018 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schwartz v. Harp,*
108 F.R.D. 279, 281 (C. D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Taylor v. Safeway Stores, Inc.,*
524 F.2d 263, 270 (10th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tierno v. Rite Aid Corp.*
2006 U.S. Dist. LEXIS 71794 *25 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Walters v. Reno*
145 F.3d 1032, 1046 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wang v. Chinese Daily News,*
231 F.R.D. 602, 607 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Weyner v. Syntex Corp.,*
117 F.R.D. 641, 644 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Windham v. American Brands, Inc.,*
565 F.2d 59, 68 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Whiteway v. FedEx Kinko's Office & Print Servs.,*
153 Lab. Cas. (CCH) P35,196 *15 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . 22

State Cases

*D.R. Horton v. Green*
120 Nev. 549, 554 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sav-On Drug Stores, Inc. v. Superior Court,*
34 Cal.4th 319, 338 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Statutes and Regulations

FRCP Rules 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 13, 14, 15, 16, 17, 18, 19, 20

NRS 608.018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17, 22

Nevada Adopted Regulation of the Labor Commissioner Sec. 12.2 . . . . . . . . . . . . . . . . . . . . 22

iii

Nevada Adopted Regulation of the Labor Commissioner Sec. 12.3 . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. §541.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. §541.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. §541.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Secondary Sources</u>

1 *Newberg* (4th Ed.)
    § 3:5 at pp. 233-235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2 *Newberg (4th Ed.)*
    § 4.25 at p. 169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2 *Newberg (4th Ed.)*
    § 4.25 at pp. 169-174 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO**    **Case No. 3:07-CV-00253-LRH-RAM**
**CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**MOTION TO CERTIFY CLASS ACTION**

## I.      INTRODUCTION

Plaintiffs Donald Andreas, Jerry T. Keefhaver, Jr., Charles Boneck, William Hart and Ken Becker respectfully move for an order certifying this action to proceed as a class action under FRCP Rule 23. Employment-based claims for failure to pay overtime and commissions due are exactly the type of claims typically certified to proceed on a classwide basis in numerous published decisions.

This motion is based upon three policies by the defendant, Lowe's HIW, Inc., that are unlawful.  First, Plaintiffs base their motion on the Defendant's "Salary Plus Overtime" policy (hereinafter, SPO), whereby the Defendant's employees with the job title of "Specialist" earned (less than) half their hourly rate for weekly hours above forty (instead of time and a half as required by law).  Plaintiffs additionally base their motion on the classification of the Defendant's employees with the job titles of "Loss Prevention & Safety Manager" (more senior security guards) and "Zone Manager" is proper under the Nevada Revised Statutes. The Court can determine the legality of these policies on a class-wide basis.

The proposed class consists of three subclasses.  The first subclass (hereinafter the "SPO subclass") all persons with the job title "Specialists" who are or were employed by the Defendant, Lowe's HIW, Inc. (hereinafter "Lowe's"), from March 17, 2004 to March 31, 2006, and who were paid in accordance with Lowe's "Salary Plus Overtime Program."[1]  This class consists of approximately 176 persons.  The second subclass (hereinafter the "LPS Manager subclass") consists of 48 past and current "Loss Prevention and Safety Managers" (hereinafter LPS Managers) who provided security services to Lowe's stores.  The last subclass (hereinafter the "Zone Manager subclass") consists of 48 past and current "Zone Managers," whose primary

---

[1]

Because this policy, as implemented, paid the Specialists a lower hourly rate for every hour worked in excess of forty hours per week, Lowe's employees pejoratively referred to this policy as "Chinese Overtime." Decl. of Charles Boneck, ¶4; Decl. of Ken Becker, ¶4; Decl of Donald Andreas, ¶9; Decl. of Jerry T. Keefhaver, Jr., ¶8 and 9; Decl. of James M. Treglio (hereinafter "JMT"), Ex. 1, 106:1-107:16.

1   duty was to insure the smooth operation of various "Zones" in Lowe's Nevada stores.  This

2   case is brought under Nevada Law (the Nevada Revised Statutes) and was removed to this

3   Court by the Defendant.

4         For the SPO subclass, Lowe's does not dispute that it paid each person with the title of

5   "Specialist" a declining rate of overtime payment, whereby Lowe's decreased the hourly rate of

6   payment for every hour in excess of forty hours per week worked, and then only paid half of

7   that rate.  Plaintiffs will show that this policy lead to class members being paid less than $7.73

8   per hours, rate of exemption for overtime under the Nevada Revised Statutes until July 2005.[2]

9   Thereafter, the Plaintiffs will show that the SPO subclass members were then systematically

10  denied the proper time-and-a-half overtime rate required by Nevada law.

11        For the LPS Manager subclass and the Zone Manager subclass, Lowe's does not dispute

12  than either group worked overtime, or that they were not paid for the overtime they worked.

13  Rather, Lowe's argues that these members of the putative subclasses were covered by the

14  administrative and/or executive exemptions.  As the plaintiff will show, Lowe's classifications

15  under these exemptions are faulty, as its employees with the job titles of "Loss Prevention and

16  Safety Manager" and "Zone Manager" spent 50% or more of their time on non-exempt job

17  duties.  The class claim is that the latter two positions were classified as exempt when, in fact,

18  they should have been classified as non-exempt.

19        Plaintiffs Donald Andreas, Jerry T. Keefhaver, Jr., Charles Boneck, William Hart and

20  Ken Becker are adequate class representatives.  Plaintiffs Andreas, Boneck, Becker, and

21  Keefhaver worked overtime for the Lowe's in Nevada and were all denied adequate overtime

22  compensation under Lowe's SPO policy.  Plaintiffs Andreas and Keefhaver were also Loss

23  Prevention and Safety Managers for Lowe's in Nevada who worked overtime and were

24  misclassified as exempt under the administrative exemption.  Plaintiff Hart was a Zone

25

26

27  [2]

28       After July 2005, the Nevada Revised Statutes were revised, and the exemption based upon earning over one-and-a-half the minimum wage was eliminated for hours worked in excess of forty hours worked per week.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO**       **Case No. 3:07-CV-00253-LRH-RAM**
**CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1   Manager for Lowe's in Nevada and was misclassified as exempt from overtime compensation,

2   and was not paid overtime compensation.

3       Class counsel are adequate as they are experienced in class action litigation having

4   represented literally thousands of consumers nationwide in various class actions and have

5   litigated multiple wage and hour matters. A class action is superior to other methods for the fair

6   and efficient adjudication of this controversy because the practices engaged in are common to

7   all members of the class and judicial economy is not served by multiple actions with

8   duplicative and repetitive testimony. For all these reasons and those set forth herein, Plaintiffs

9   respectfully request an Order certifying the class and to give notice to potential class members.

10

11  **II.     APPLICABLE LAW TO CLASS CERTIFICATION**

12      FRCP Rule 23(c)(1) provides:

13      As soon as practicable after the commencement of an action brought as a class
        action, the court shall determine by order whether it is to be so maintained. An
14      order under this subdivision may be conditional, and may be altered or amended
        before the decision on the merits.

15
        The party moving for class certification has the burden of proving that the class satisfies
16
    the prerequisites and a class action ground set forth in FRCP Rules 23(a) and (b). *Hanon v.*
17
    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).
18
        Although the Court must engage in a rigorous analysis to determine whether all the
19
    prerequisites of Rule 23(a) are satisfied (*General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)),
20
    an extensive evidentiary showing is not required. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th
21
    Cir. 1975). All that is necessary is sufficient information for the court "to form a reasonable
22
    judgment on each requirement." *Id*. The court does not examine the merits of the case, and
23
    must accept as true the substantive allegations of the class claim. *Id*. at n.17. The procedures
24
    governing federal class actions under Rule 23 do not permit inquiries into the merits of class
25
    claims for relief. In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), the Supreme Court
26
    explained that "nothing in either the language or history of Rule 23 . . . gives a court any
27
    authority to conduct a preliminary inquiry into the merits of a suit in order to determine
28
    whether it may be maintained as a class action." 417 U.S. at 177. This also prevents the

inequitable practice of "one-way intervention"; *i.e.*, where unnamed class members cannot opt-out of any suit in which the merits are decided adversely to their interests. *See Hudson v. Chicago Teachers Union* , 922 F.2d 1306, 1317 (7th Cir. 1991).

In *Eisen*, the High Court expressed its agreement with *Miller v. Mackey International, Inc.*, 452 F.2d 424 (5th Cir. 1971), which held that a trial court should not consider the substantive merits of a claim for relief when passing on a motion for a class action. In *Miller*, the Court emphasized that the propriety of a class action is "basically a procedural question" and that "[a] suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." 452 F.2d at p. 427. The Supreme Court concluded in *Eisen*:

> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.
> *Eisen*, 417 U.S. at 178 (*quoting Miller*, 452 F.2d at 427).

While plaintiffs believes they will most certainly prevail on the merits, this motion appropriately focuses on the satisfaction of the requirements of Rule 23.

## III.   FACTUAL BACKGROUND

### A.   SPO Subclass

At some point during their employment with Lowe's, Plaintiffs Charles Boneck, Ken Becker, Jerry T. Keefhaver, Jr., and Donald Andreas were enrolled in Lowe's "Overtime Eligible Compensation Plan."  Decl. of Charles Boneck, ¶4; Decl. of Ken Becker, ¶4; Decl of Donald Andreas, ¶9; Decl. of Jerry T. Keefhaver, Jr., ¶8 and 9.  This program, also referred to as "Salary Plus Overtime" was used specifically for Lowe's employees who held the position of "Specialist."  Decl. of JMT, Ex. 1, 26:8-16.  Lowe's employees referred to the this program as "Chinese Overtime."  Decl. of Charles Boneck, ¶4; Decl. of Ken Becker, ¶4; Decl of Donald Andreas, ¶9; Decl. of Jerry T. Keefhaver, Jr., ¶8 and 9; Decl. of JMT, Ex. 1, 106:1-107:16.  Under the SPO policy, Lowe's employees with the "Specialist" job title who worked more than forty hours per week were paid half of their effective hourly rate.

The "Specialist" position was developed for "somebody that specializes obviously in a particular area."  Decl. of JMT, Ex. 1, 10:10-19.  Types of specialists included both sales specialists in particular areas, such in the area of appliance sales (Decl. of Ken Becker ¶2),

**7**

1  contractor sales (Decl. of Donald Andreas, ¶9), flooring, cabinets, plumbing, millwork, outdoor

2  power equipment, live nursery, walls, and/or loss prevention (Decl. of Charles Boneck, ¶2).

3  Decl. of JMT, Ex. 1, 11:23-12:9.  Every Lowe's store in Nevada had a least one of the ten types

4  of specialist during the class period.  Decl. of JMT, Ex. 1, 121:16-122:23.  During the putative

5  class period (March 17, 2004 to present) there were approximately 16 Lowe's stores in the

6  State of Nevada.  Using their best estimate, plaintiffs believe this subclass to include a

7  minimum of 176 individuals.[3]

8      All specialists worked some amount of overtime.  Loss prevention specialists, as part of

9  their job description, were *required* to work 48 hour weeks until March of 2006.  Decl. of JMT,

10  Ex. 1, 20:12-16, Ex. 3.  Other types of specialists, such as appliance specialists and commercial

11  sales specialists were also required to work overtime as part of their duties.  Decl. of Becker,

12  ¶7; Decl. of Andreas, ¶11.  After March of 2006, specialists received one and a half times their

13  hourly rate for every hour worked in excess of forty in a week.  Decl. of JMT., Ex. 1, 73:23-

14  74:3.  Thus after March 2006, Lowe's was in compliance with Nevada law.

15      But prior to March 2006, Specialists who worked overtime were not paid one and a half

16  times their hourly rate.  See Decl. of Boneck, Ex. A (identified at Decl. of JMT, Ex. 1, 84:4-

17  84:21).  Lowe's SPO Policy worked as follows: Lowe's would calculate a specialist's hourly

18  rate by dividing the total hours worked in that week by the employee's salary.  See Decl. of

19  Boneck, Ex. A.  The more hours worked, the lower the hourly rate.  Then using that hourly rate,

20  Lowe's would calculate the effective hourly rate for that week, and then pay the employee half

21  that amount for hours worked in excess of forty per week.  See Decl. of Boneck, Ex. A.  The

22  end result of the SPO policy was that employees would often be paid less than $5.15 per hour

23  (the Federal Minimum wage) for each hour of overtime worked.  Decl. of JMT, Ex. 1, 78:19-

24  80:24; Ex. 4 (examples of paystubs of Charles Boneck).  For each additional hour of overtime

25  worked, the lower the hourly rate that the employee would be paid, and the lower still the

26  _____

27  [3]

28      Lowe's has, thus far, refused to state the total number of Specialists it employed in the State
of Nevada during the class period.  According to Lowe's 30 (b)(6) witness there were at least ten
specialists in each of Lowe's 16 stores in Nevada during the class period.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO**            **Case No. 3:07-CV-00253-LRH-RAM**
**CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1    amount of overtime compensation.  Decl. of JMT., Ex. 1, 85:21-86:1.  The class representatives

2    experienced the ramifications of this policy first-hand.   Decl. of Becker ¶5; Decl. of Boneck

3    ¶5; Decl. of Andreas ¶11; Decl. of Keefhaver ¶7.  This policy was used for all specialists

4    employed by Lowe's in Nevada prior to March 2006.  Decl. of JMT, Ex. 1, 86:2-12.

5    **B.      LPS Manager Subclass**

6          Starting in December 2001, Jerry T. Keefhaver was hired by Lowe's to be a LPS

7    Manager.  Decl. of Keefhaver, ¶2.  He held that position until May 2005.  Decl. of Keefhaver

8    ¶9.  Donald Andreas was employed by Lowe's as a LPS Manager from March 2004 to March

9    2005.  Decl. of Andreas ¶2.  The job description and performance guide created by Lowe's for

10   the LPS Manager position are Exhibits 5 and 6 to the Declaration of JMT, respectively.  In all,

11   there were 32 LPS Managers employed by Lowe's in the State of Nevada during the putative

12   class period.  Decl. of JMT, Ex. 2.

13         According to the job description provided by Lowe's (Decl. of JMT, Ex. 5), the duty of

14   the LPS Manager is to "protect customers, employees and company assets."  LPS Managers

15   worked to prevent theft and vandalism.  Decl. of Keefhaver ¶3; Decl. of Andreas ¶3.  LPS

16   Managers do not set store policies or procedures, rather they implement policies of their

17   supervisors at each store.  Decl. of JMT, Ex. 1, 143:8-23.  They do not have the ability to

18   determine their budget, the number of people working in a store, nor do they have the ultimate

19   responsibility in controlling inventory.  Decl. of JMT, Ex. 1, 145:15-148:18.  That

20   responsibility rested in the Store Manager: all the LPS Manager could do is recommend

21   changes to policies or inventory which the Store Manager would have to approve.  Decl. of

22   Keefhaver ¶4; Decl. of Andreas ¶4; Decl. of JMT, Ex. 1, 148:10-17.  LPS Managers did not

23   supervise anyone.  Decl. of Andreas ¶4; Decl. of Keefhaver ¶4.[4]

24         All exempt managerial positions at Lowe's, LPS Managers included, were required to

25   work a minimum of 48 hours per week.  Decl. of JMT, Ex. 1, 179:9-15; Decl. of Keefhaver ¶5;

26   _____

[4]

27         The 30 (b) (6) witness for Lowe's testified that in some circumstances, LPS Managers do
28   give some instruction to retail employees, but appeared to confuse LPS Manager, with a
     "Department Head," who was an hourly non-exempt employee, Decl. of JMT, Ex. 1, 152:19-153-3.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO          Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1   Decl. of Andreas ¶5.  These work schedules were set by Lowe's corporate office.  Decl. of

2   JMT, Ex. 1, 178:25-179:8.

3

4       Thus, the Court can adjudicate at trial whether Lowe's LPS Managers were properly

5   classified as exempt under Nevada law.

6   **C.      Zone Manger Subclass**

7       Plaintiff William Hart worked for Lowe's in Nevada as a Zone Manager from March

8   2003 to October 2004.  Decl. of Hart, ¶3.  The job description and performance guide created

9   by Lowe's for the LPS Manager position are Exhibits 7 and 8 to the Declaration of JMT,

10  respectively.  In all there were 183 persons employed as "Zone Managers" in the State of

11  Nevada during the putative class period.  Decl. of JMT, Ex. 2.  The "Zone" refers to a portion

12  of a Lowe's store emcompassing several sales departments.  Decl. of JMT, Ex. 1, 34:24-35:21.

13      According to the job description provided by Lowe's (Decl. of JMT, Ex. 7), the purpose

14  of the Zone Manager is to be "responsible for achieving budgeted sales and margins in assigned

15  area.  Responsible for ensuring all corporate merchandising standards are maintained on a daily

16  basis. . .responsible for overall safety, security, supervision, training, mentoring and scheduling

17  of all assigned personnel.  Support the Store Manager to ensure that superior customer service

18  is provided across the store."  For Plaintiff Hart, being a Zone Manager entailed overseeing the

19  operations of a section, or zone of a store.  Decl. of Hart, ¶4.  But rather than supervising

20  anyone, Hart spent most of his time doing the same work as sales associates: stocking,

21  customer service and sales.  Decl. of Hart ¶5.

22      In fact, Zone Managers are expected to assist in sales, stocking, cleaning, and general

23  maintenance of their "zones".  Decl. of JMT, Ex. 1, 38:25-41:16.  As a Zone Manager, William

24  Hart could not determine the prices of goods sold by Lowe's, nor could he hire or fire anyone,

25  nor could he set any store policies, as those decisions were the sole province of the Store

26  Manager.  Decl. of Hart ¶5.

27

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO**          **Case No. 3:07-CV-00253-LRH-RAM**
**CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1    Zone Managers are required to work a minimum of fifty hours per week.  Decl. of JMT,

2   Ex. 1, 36:8-11; Decl. of Hart ¶6.  These work schedules were set by Lowe's corporate office.

3   Decl. of JMT, Ex. 1, 178:25-179:8.

4   **IV.    SUMMARY OF OVERTIME EXEMPTIONS UNDER NEVADA LAW**

5    NRS 608.018 is Nevada's governing statute for overtime compensation.  For the LPS

6   Manager and Zone Manager subclass, the Court need only determine whether they were

7   properly classified as exempt under the administrative and/or executive exemptions of NRS

8   608.018.  Whether or not these subclass members worked overtime is a point readily conceded

9   by Lowe's.  See Decl. of JMT, Ex. 1, 36:8-11; Decl. of JMT, Ex. 1, 179:9-15.

10    Section 12.3 of Adopted Regulation of the Labor Commissioner clarifies how the Court

11   could determine whether or not LPS Managers and Zone Managers are exempt under NRS

12   608.018.  "The Commissioner will refer to 29 CFR §§541.1 and 541.2 to determine if an

13   employee is employed in a bona fide executive or administrative capacity for the purposes of

14   paragraph (e) of subsection 2 of NRS 608.018."

15    29 C.F.R. §541.100 defines the executive exemption as follows:

16   (a) The term ``employee employed in a bona fide executive capacity'' in section
17   13(a)(1) of the Act shall mean any employee: (1) Compensated on a salary basis
     at a rate of not less than $455 per week (or $380 per week, if employed in
     American Samoa by employers other than the Federal Government), exclusive
18   of board, lodging or other facilities;  (2) Whose primary duty is management of
     the enterprise in which the employee is employed or of a customarily recognized
19   department or subdivision thereof; (3) Who customarily and regularly directs the
     work of two or more other employees; and (4) Who has the authority to hire or
20   fire other employees or whose suggestions and recommendations as to the
     hiring, firing, advancement, promotion or any other change of status of other
21   employees are given particular weight.

22   29 C.F.R. §541.200 defines the administrative exemption as follows:

23   (a) The term ``employee employed in a bona fide administrative capacity'' in
     section 13(a)(1) of the Act shall mean any employee: (1) Compensated on a
24   salary or fee basis at a rate of not less than $455 per week (or $380 per week, if
     employed in American Samoa by employers other than the Federal
25   Government), exclusive of board, lodging or other facilities; (2) Whose primary
     duty is the performance of office or non-manual work directly related to the
26   management or general business operations of the employer or the employer's
     customers; and (3) Whose primary duty includes the exercise of discretion and
27   independent judgment with respect to matters of significance.

28

**11**

1    Further, 29 C.F.R. §541.201 (a) clarifies the term "directly related to the management or

2    general business operations as:

> (a) To qualify for the administrative exemption, an employee's primary duty
> must be the performance of work directly related to the management or general
> business operations of the employer or the employer's customers. The phrase
> ``directly related to the management or general business operations'' refers to the
> type of work performed by the employee. To meet this requirement, an
> employee must perform work directly related to assisting with the *running or
> servicing of the business, as distinguished, for example, from working on a
> manufacturing production line or selling a product in a retail or service
> establishment.*
>    (b) Work directly related to management or general business operations
> includes, but is not limited to, work in functional areas such as tax; finance;
> accounting; budgeting; auditing; insurance; quality control; purchasing;
> procurement; advertising; marketing; research; safety and health; personnel
> management; human resources; employee benefits; labor relations; public
> relations; government relations; computer network, internet and database
> administration; legal and regulatory compliance; and similar activities. Some of
> these activities may be performed by employees who also would qualify for
> another exemption.
> Emphasis Added.

    In this case, the administrative exemption is not appropriate here because both the Zone

Manager and the LPS Manager positions worked within Lowe's retail establishment, and thus,

does not meet the requirements under 29 C.F.R. §541.201.  Therefore, only the executive

exemption should apply.  In determining whether the Zone Manager or LPS Manager positions

were properly classified under the Executive exemption, the Court is to take into account that,

"An employee who merely assists the manager of a particular department and supervises two or

more employees only in the actual manager's absence does not meet this requirement."  29

C.F.R. §541.104 (c).  As noted above, neither Hart, Andreas nor Keefhaver reported any ability

to hire or fire anyone.  That was the province of the Store Manager.  Moreover, for the LPS

Managers, in particular, their supervisory role, if any, appears to occur only in the absence of

other managers, and thus, they should not be exempt.

    Nonetheless, the Court, of course, need not consider whether these positions were

exempt or non-exempt at this time.  Rather, the Court need only consider whether it could, at

some point in the future, determine the proper classification on a class-wide basis.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO        Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

**V.    THE CLASS MEETS ALL THE REQUISITES FOR CERTIFICATION UNDER FRCP RULE 23.**

**A.    SUMMARY OF LAW**

The burden is on the party seeking to maintain the action as a class action to establish a prima facie showing of each of the 23(a) prerequisites and the appropriate 23(b) ground for a class action. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). In evaluating whether plaintiffs have met their burden, the court should accept the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

At the certification hearing, the court looks to the pleadings and may consider extrinsic evidence to determine whether the Rule 23 requirements are met. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3D 473, 484 (2nd Cir. 1995). To be certified, a class action must satisfy the four prerequisites of typicality, commonality, numerosity, and adequacy of representation. See FRCP Rule 23(a). Following satisfaction of the Rule 23(a) requirements, a plaintiff must additionally satisfy one of the criteria contained in FRCP Rule 23(b) – ordinarily either "superiority" (Rule 23(b)(1)) or "predominance" (Rule 23(b)(3)).

Here, the class meets all the prerequisites of FRCP Rule 23(a), as well as 23(b)(1) *and* 23 (b)(3).

**B.  STEP ONE: RULE 23(a)**

1.  <u>The Class is so Numerous That Individual Adjudication is Impractical</u>

Numerosity does not require that joinder of all members be impossible, but only that joinder be impracticable. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); FRCP Rule 23(a)(1); *See also*, *German v. Federal Home Loan Mortg. Corp.*, 885 F.Supp. 537, 552 (S.D.N.Y. 1995). Plaintiff does not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. 1 *Newberg* (4th Ed.) § 3:5 at pp. 233-235 and 246-247; *Arnold*, 158 F.R.D. 439. Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980); *Schwartz v. Harp*, 108 F.R.D. 279, 281 (CD Cal. 1985). Here, the proposed class is, at least, 407 individuals (Decl. of JMT, Ex. 1 and 2). Thus, joinder is impracticable, demonstrating the substantial benefit of class treatment and an extraordinary

1 likelihood that a denial of certification will, as a practical matter, permit the waiver of the

2 claims of hundreds of under-represented workers.

3 2.    The Proposed Class Representatives will Adequately Represent the Class.

4        Rule 23(a)(4) requires that the proposed representative does not have conflicts of

5 interest with the proposed class and that the representative is represented by qualified counsel.

6 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9 th Cir. 1998); *Walters v. Reno*, 145 F.3d

7 1032, 1046 (9th Cir. 1998). Mere divergence of opinion between the class and its

8 representative(s) is not sufficient. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir.

9 2000).

10        In this case, there is no evidence of antagonism between the proposed representatives,

11 or theri attorneys, and the putative class and, even if there were, any class member who wishes

12 to "opt out" of the class will be afforded an opportunity to do so.  Moreover, Plaintiffs'

13 attorneys are experienced class action litigators in a firm devoted to the prosecution of wage

14 and hour class actions such as this.   See Decl. of David R. Markham.  Plaintiffs and their

15 counsel are willing to pursue this action vigorously on behalf of the class, have thoroughly

16 investigated the claims of the class, and have engaged in the need discovery of employment

17 litigation, "including document request and production, interrogatories, and the taking and

18 defending of depositions." *Hanlon*, 150 F.3d at 1022.

19 3.    The Proposed Class Representative's Claim Is Typical of That of the Class

20        Rule 23(a)(3) requires typicality, which the Ninth Circuit also interprets permissively.

21 *Hanlon*, 150 F.3d at 1020. Typicality requires that the named plaintiff be a member of the class

22 he represents and "possess the same interest and suffer the same injury" as class members.

23 *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). The named plaintiff's

24 claims need not be identical to the claims of the class to satisfy typicality; rather, the claims are

25 typical if they are "reasonably co-extensive with those of absent class members." *Hanlon*, 150

26 F.3d at 1020. It is sufficient for plaintiffs' claims to "arise from the same remedial and legal

27 theories" as the class claims. *Arnold*, 158 F.R.D. at 449; *California Rural Legal Assistance v.*

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO          Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1  *Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) [class representatives and members

2  of the class need only "share a common issue of law or fact"].

3       Moreover, Rule 23's typicality and commonality (*discussed, infra*) requirements "tend

4  to merge," and a finding of commonality ordinarily will support a finding of typicality. *Falcon*,

5  457 U.S. at 157 n.13; *Weyner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) [observing

6  a "necessary overlap of the provisions of Rule 23"]; *California Rural Legal Assistance*, 917

7  F.2d at 1175 [Rule 23 "does not require the named plaintiffs to be identically situated with all

8  other class members. It is enough to share a 'common issue of law or fact.'"].

9       As stated in the Summary of Facts section above, the plaintiffs held the titles of "Sales

10  Specialist," "Loss Prevention Specialist," "Loss Prevention and Safety Manager" and "Zone

11  Manager" during the putative class period, and worked overtime without adequate

12  compensation in all positions.  Lowe's 30 (b) (6) Witness has testified that it was the Lowe's

13  policy to have persons in these positions work overtime, and each representative and supporting

14  documentation indicates that they did so.

15  4.    <u>Common Questions of Law Exist Between Plaintiff and the Class.</u>

16       The common nucleus of operative facts results from Lowe's failure to adequately

17  compensate its employees for overtime worked who held the position of "Specialist," and LPS

18  Managers and Zone Managers  who would qualify as a member of the proposed Class was

19  subject to the same "exempt" classification by Lowe's. So long as class members assert a

20  common complaint and demonstrate they are subject to the same harm, commonality exists.

21       The pleadings and evidence in this case are crystal clear that the alleged harm applies

22  commonly to each member of the class. The Ninth Circuit construes the commonality

23  prerequisite permissibly. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1019. All questions of law and

24  fact need not be common. *Id*. Rather, "[t]he existence of shared legal issues with divergent

25  factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

26  remedies within the class." *Id*.

27       As set forth in the Complaint at ¶8, the common question is:

28

- Whether Plaintiffs suffered injury by Lowe's failure to compensate the putative class members for the hours they worked in excess of forty hours in a given week;

From that core common question the subsidiary questions are as follows:

- Whether Lowe's "Salary Plus Overtime Policy" was a lawful method of computation of overtime compensation under the Nevada Revised Statutes 608.016 and 608.018;

- Whether Lowe's properly classified each LPS Manager and Zone Manager as "salaried exempt" from overtime compensation under the Nevada Revised Statutes;

- The effect upon and the extent of injuries suffered by Plaintiffs and other members of the classes and the appropriate amount of compensation.

All of these are common questions of law and/or fact as to each and every class member While the putative class here enjoys several common questions of law and fact, there "need be only a single issue common to all members of the class" to meet the commonality requirement. *In re American Medical Systems, Inc*., 75 F.3d 1069, 1080 (6th Cir. 1996). A common nucleus of operative facts alone is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Rosario v. Livaditis*, 963 F.2d 1013, 1017-1018 (7th Cir. 1992); see also *Hanlon v. Chrysler*, 150 F.3d 1011, at 1019 [common question requirement can be satisfied either by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies.] Here the obvious legal questions are whether the SPO policy, as applied to Specialists, was lawful under Nevada law, and whether LPS Managers and Zone Managers were properly classified as "exempt" from overtime compensation under NRS 608.018.

Under federal law, the employer bears the burden of showing that an employee is exempt from overtime laws. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197 (1974). If individual overtime exemption issues could preclude class certification, as Lowe's may attempt to argue here, the proponent of an overtime class action would be forced to prove that the entire class was non-exempt whenever a defendant raises the affirmative defense of exemption. *See Romero v. Producer's Dairy Foods, Inc.*, 235 F.R.D.474, 486 (E.D.Cal.,2006)).  Requiring a plaintiff to demonstrate that class members are not exempt is improper and would effectively reverse that burden. *Id*.

**16**

Just as in *Romero*, other courts have also found that the commonality requirement of Rule 23(a)(2) is satisfied where a putative class of employees challenges the employer's classification of those employees as exempt from overtime requirements under state labor laws. *Wang v. Chinese Daily News*, 231 F.R.D. 602, 607 (C.D. Cal. 2005); *Leyva v. Buley*, 125 F.R.D. 512, 515-16 (E.D. Wash. 1989).

As the *Wang* Court noted:

> The commonality preconditions of Rule 23(a)(2) are "construed permissively." See *Hanlon*, 150 F.2d 1019. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Staton, 327 F.3d at 953 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1019). Members of the class may possess different avenues of redress, but their claims must stem from the same source. See Hanlon, 150 F.3d at 1019.

Where Nevada law is silent on areas of its law, the Nevada Supreme Court has instructed that Courts should look to case law in its sister states, and the Ninth Circuit for guidance. *D.R. Horton v. Green*, 120 Nev. 549, 554 (2004). California, which has similar statutes for both overtime compensation and class certification is instructive here. The California Supreme Court, interpreting California's rules regarding class certification (which are based on Rule 23) held, "neither variation in the mix of actual work activities undertaken during the class period by individual [class members], nor differences in the total unpaid overtime compensation owed each class member, bars class certification." *Sav-On Drug Stores*, 34 Cal.4th 319, 335 (2004). "[C]onsiderations such as 'the employer's realistic expectations' and 'the actual overall requirements of the job' are likely to prove susceptible of common proof." *Id.* at 336. The same is true here.

## C.   STEP TWO: RULE 23(b)

Once a plaintiff has satisfied the Rule 23(a) preliminary requirements of numerosity, commonality, typicality, and adequacy of representation, he must demonstrate that the proposed class action qualifies under one of the sub-sections of Rule 23 (b). In this case, plaintiff has sought certification under Rule 23 (b)(1) and  Rule 23 (b)(3). Though plaintiff can satisfy both elements, it is sufficient for certification that he satisfy only *one*.

1.      <u>Class Adjudication Is Superior To All Other Forms</u>.

Under Rule 23 (b)(1), a plaintiff must establish, "that class action treatment is the preferable method of handling a case." This is shorthand for the actual rule, which states that Class Actions are appropriate when: (1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, **or**

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Rule 23 (b)(1)(A-B).

Basically, what the so-called Superiority element represents is the principle that Class adjudication is appropriate when prosecution of individual actions might lead, from case to case, to contradictory results, prejudicing the interests of either the defendant or members of the plaintiff's class. "To illustrate: separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying determinations." See <u>*Notes of Advisory Committee on 1966 Amendments*</u>.  Though the facts of liability are no different, different courts adjudicating the matter might reach conflicting conclusions.

Here, the consequences of varying outcomes are undesirable. There should be one decision as to the legality of Lowe's SPO Policy, and one decision as to whether LPS Managers and Zone Managers are, in fact, exempt. This risk alone warrants certification so that the determination can be made once and for all and will bind all of the parties. *Amchem Products, Inc. v. Windsor*, 521 US 591, 614 (1997) [Rule 23(b)(1)(A) is satisfied "where the party is obligated by law to treat the members of the class alike, or where the party must treat all alike

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO          Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**

1   as a matter of practical necessity."]. Applicability of an "exemption" to an entire class of

2   employees performing the same functions should not be determined on a piecemeal basis.

3          Moreover, as a matter of public policy, class-wide adjudication of these claims is

4   consistent with Nevada's goal of ensuring the well-being of the worker and the worker's

5   family. The *Nevada Revised Statute* sections at issue concerning payment of wages due are

6   minimum labor standards. When they are violated on an individual basis, the employer's

7   successful violation only encourages further violations. Attacking the violation individually

8   simply does not address the problem. When the violation is the same for many of the

9   defendant's employees, the superior method of adjudication is not an individual action, but

10  class wide adjudication. This ensures that the State's important public policy, and the rights of

11  hundreds of workers and their families, can be vindicated, the violation corrected, and the law

12  enforced. As noted by the Court in *Katz v. Carte Blanche Corp.*:

13         [I]t must be remembered that the foundation of a class action is that it is "a semi-
           public remedy administered by the lawyer in private practice". (Kalven and
14         Rosenfield, The Contemporary Function Of The Class Suit, 8 U.Chi.L.Rev. 684,
           717 (1941)). It is often the only practical effectuation of remedial provisions of
15         legislative policies. The action of Federal agencies entrusted with the
           enforcement of public policy is limited to compelling compliance with a statute.
16         Private litigation, particularly in the form of a class action, serves to supplement
           administrative action in furthering the public policy. (See *J. I. Case v. Borak
17         (1964), 377 U.S. 426, 84 S. Ct. 1555, 12 L. Ed. 2d 423*).

18         53 F.R.D. 539, 543 (W.D. Penn. 1971).

19         There can be no more appropriate use of the Class Action form than in the prosecution

20  of a case involving the violation of important Nevada public policies impacting the rights of

21  hundreds of individuals who were subject to the same treatment by Lowe's.

22  2.     Issues Common To The Class Predominate Over Individual Issues

23         As an alternative to FRCP Rule 23(b)(1), under Rule 23(b)(3), a plaintiff must establish

24  that the questions common to the class predominate over the questions affecting individual

25  members. As noted by the Advisory Committee,

26         Subdivision (b)(3) encompasses those cases in which a class action would
           achieve economies of time, effort, and expense, and promote uniformity of
27         decision as to persons similarly situated, without sacrificing procedural fairness
           or bringing about other undesirable results. The Court is required to find, as a
28         condition of holding that a class action may be maintained under this
           subdivision, that the questions common to the class predominate over the

1  questions affecting individual members. It is only where this predominance
   exists that economies can be achieved by means of the class-action device.
2  *See Notes of Advisory Committee on 1966 Amendments.*

3      Under Rule 23(b)(3), the moving party must demonstrate that common questions

4  "predominate over any questions affecting only individual members" and that a class action is

5  "superior to other available methods for the fair and efficient adjudication of the controversy."

6  More plainly put, FRCP Rule 23(b)(3) "focuses on the relationship between common and

7  individual issues." *Wang*, 231 F.R.D. at 613 [finding common questions of law and fact to

8  predominate in an overtime misclassification case]; *See also*, *Mullen v. Treasure Chest Casino,*

9  *LLC*, 186 F.3d 620, 627 (5th Cir. 1999) [predominance is determined not by counting the

10 number of common issues, but by weighing their significance]. As explained in Newberg's

11 treatise, while the meaning of "predominance" has remained enigmatic, at least "[m]ost courts

12 have agreed on what the predominance test does not entail." 2 *Newberg* (4th Ed.) § 4.25 at p.

13 169. Specifically, as Professor Newberg explains:

14         The test was not meant to require that the common issues will be dispositive of
           the controversy or even be determinative of the liability issues involved. ... In
15         addition, the predominance requirement is not a numerical test that identifies
           every issue in the suit as suitable for either common or individual treatment and
16         determines whether common questions predominate by examining the resulting
           balance on the scale. A single common issue may be the overriding one in the
17         litigation, despite the fact that the suit also entails numerous remaining
           individual questions. ... In finding that common questions do predominate over
18         individual ones in particular cases, courts have pointed to such issues that
           possess the common nucleus of facts for all related questions, have spoken of a
19         common issue as the *central* or *overriding* question, or have used similar
           articulations. ... Implicit in all these articulations of satisfaction of the
20         predominance test is the notion that adjudication of the common issues of the
           particular suit has important and desirable advantages of judicial economy
21         compared to all other issues, or when viewed by themselves. 2 *Newberg* (4th Ed.)
           § 4.25 at pp. 169-174 [*emphasis added*].

22     Lowe's payment scheme for Specialists is a written policy and practice that applies

23 uniformly to some 176 subclass members.   Further Lowe's misclassification of LPS Managers

24 and Zone Managers as exempt from overtime is a policy and practice applied uniformly to each

25 of the approximately 231 subclass members. The question whether that policy was lawful

26 predominates over all other issues. Also relevant is the fact that (i) there would be no difficulty

27 in maintaining this as a class action because the claims of each class member are relatively

28 simple to adjudicate, (ii) this forum is appropriate since Lowe's itself chose this District by its

**20**

1   removal to Federal Court and because Lowe's employed Specialists, LPS Managers and Zone

2   Managers in this District, and (iii) class members would likely have little interest in

3   individually controlling the prosecution of separate actions since the amount in controversy for

4   each class member will vary and in some cases may be too small to warrant individual litigation

5   at all (e.g., Specialists, LPS Managers and Zone Managers employed for a short period of time

6   by Lowe's). Moreover, it is very likely that currently employed Specialists, LPS Managers, and

7   Zone Managers, unlike Donald Andreas, Jerry T. Keefhaver, Jr., Ken Becker, Charles Boneck

8   and William Hart, may fear retaliation by Lowe's, in one form or another, should they attempt

9   to bring their own the questions common to the class predominate over the questions affecting

10  individual members.

11          For the Chinese Overtime subclass, the Court need only make a decision based upon the

12  written policy of Lowe's as it relates to Nevada's overtime statutes.  NRS 308.018.  This statute

13  requires that every non-exempt employee be paid one and a half times their hourly rate for

14  every hour worked in excess of 40 hours per week.  From July 1, 2005 to March 2006, Lowe's

15  paid its employees using the Chinese Overtime system, that is categorically unlawful under

16  608.018.  Moreover, during this period, Lowe's required its non-exempt Specialist employees

17  to work a minimum of 48 hours per week.

18          For those Specialist employees employed prior to July 1, 2005, as the Plaintiffs Boneck,

19  Becker, Andreas and Keefhaver were, the Court needs to undertake a slightly more complicated

20  analysis.  Prior to July 1, 2005, NRS 608.018 exempted those employees who earned more than

21  one and a half times the minimum wage, which, throughout the period was $7.73 per hour.

22  Under Section 12.2 the Adopted Regulation of the Nevada Labor Commissioner, however, the

23  method of determining whether an employee earned enough to qualify for the exemption is to

24  divide the salary by hours worked during a week.  As the Court will note in its review of

25  Exhibit 4 to the Declaration of JMT, there are numerous instances where the hourly rate of

26  Specialist employees fell well below the $7.73 exemption.  For example, for the pay period of

27  November 20, 2004 to December 3, 2004, Charles Boneck earned an hourly rate of $6.95

28

1   because he worked 21.51 hours in excess of forty hours per week.  For these 21.51 hours,

2   Charles Boneck was paid $74.84.

3         For the LPS Manager and Zone Manager subclass, the Court need only determine

4   whether they were properly classified as exempt under the administrative and/or executive

5   exemptions of NRS 608.018.  Whether or not these subclass members worked overtime is a

6   point readily conceded by Lowe's.  See Decl. of JMT, Ex. 1, 36:8-11; Decl. of JMT, Ex. 1,

7   179:9-15.

8         It is clear from the evidence that both the LPS Managers and Zone Managers had duties

9   determined by their corporate office, and were conducted in a similar matter.  Not only does

10  Lowe's have job descriptions for these job titles, they also have performance guides to inform

11  the Court of what was expected of them.  The Court in *Krzesniak v. Cendant Corp.*, 2007 U.S.

12  Dist. LEXIS 47518 (N.D. Cal. 2007), found a similar situation to this one: "All Sms [Store

13  Managers] are subject to a single job description and Budget has promulgated written service

14  standards that regulate business operations.  Based on this evidence, the Court finds that it can

15  more efficiently answer the question of whether Defendants' exemption of all SMs is correct

16  through a class action than through case-by-case adjudication." *Id*. at 38-39.  Similarly, the

17  Court in *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 *25 (N.D. Cal. 2006) held:

18          As discussed earlier, the Court does not doubt that various factors, such as the
            size of a store or its location, may lead to variations in the merchandise stocked,
19          the number of store staff, the volume of sales and the like. The Court is not
            persuaded, however, that these types of variations result in fundamental
20          difference in the overall responsibilities and tasks of the Store Manager position
            itself.

21  See also *Whiteway v. FedEx Kinko's Office & Print Servs.*, 153 Lab. Cas. (CCH) P35,196 *15

22  (N.D. Cal. 2006) [holding that the Court can determine whether the Store Manager position

23  could be classified as exempt based upon job descriptions].

24         In this case, the duties of the exempt subclasses were performed substantially by the

25  class representatives.  While Hart had some supervisoral role, he could not make decisions

26  independently of his store manager.  Andreas and Keefhaver had no supervisory role any

27  greater than the role the non-exempt department heads.  Nor could they affect any policy

28  change without the direct approval of the store manager.  For these subclasses the Court may

1   well, using the declarations of the class representatives, the testimony of Lowe's 30 (b) (6)

2   Witness and the job descriptions determine whether or not the LPS Manager and Zone Manager

3   subclasses were properly or improperly classified under the executive exemption.

4        In sum, a case based upon alleged failure to pay overtime due is exactly the type of

5   action appropriate for certification as a class action. *See e.g., Romero,* 235 F.R.D. 474

6   (E.D.Cal.,2006) (certifying class of over 100 route drivers); *Chavez v. IBP, Inc*. 2002 WL

7   31662102, 4 (E.D. Wash.2002) (individualized issues did not predominate in action for unpaid

8   wages); *Ladegaard v. Hard Rock Concrete Cutters, Inc*. 200 WL 1774091, 7 (N.D. Ill. 2000)

9   (common issues predominate in action for unpaid wages).

10       Lowe's does not dispute that it did not pay any of the class members or plaintiffs

11  Andreas, Hart, Keefhaver overtime.  Nor does Lowe's dispute that it paid the class members or

12  plaintiffs Becker, Boneck, Andreas and Keefhaver under the SPO Policy  If Lowe's is

13  ultimately found liable for failing to pay overtime, or illegally paying "Chinese Overtime," this

14  case comes down to nothing more than a computation of the sums owed to each class member.

15          In cases where the fact of injury and damage breaks down in what may be
            characterized as 'virtually a mechanical task' 'capable of mathematical or
16          formula calculation,' 'the existence of individualized claims seems to offer no
            barrier to certification on grounds of manageability.'

17  *Windham v. American Brands, Inc*., 565 F.2d 59, 68 (4th Cir. 1977).  As the members of the

18  SPO Policy subclass had their hours tracked to the hundredth of an hour (See Decl. of JMT, Ex.

19  4), and as the LPS Managers and Zone Managers worked in accordance with time schedule set

20  by Lowe's, computation of damages loading these hours into a computer program which is also

21  programmed with the proper hourly rates which should have been paid under Nevada law.

22

23

24

25

26

27

28

1

## VI. CONCLUSION

2      For the foregoing reasons, Plaintiff respectfully requests that it's Motion for Class

3 Certification be granted.

4 Dated: January 3̲0̲ 2008            CLARK & MARKHAM LLP

5

6                                  By:_____

7                                    David R. Markham, Esq.,
                                   Attorney for Plaintiffs Donald Andreas,

8                                    Ken Becker, Charles Boneck, Jerry T.
                                   Keefhaver, Jr., and William Hart

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is 401 West A Street, Suite 2200, San Diego, CA 92101. I am readily familiar with the practice for collection and processing of documents through U.S. Mail.

On January 30, 2008, I served a true and correct copy of the following document described as:

1)   **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, MEMORANDUM OF POINTS AND AUTHORITIES**

2)   **DECLARATION OF DONALD ANDREAS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

3)   **DECLARATION OF KEN BECKER IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

4)   **DECLARATION OF CHARLES BONECK IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND ATTACHED EXHIBIT A**

5)   **DECLARATION OF WILLIAM HART IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

6)   **DECLARATION OF JERRY T. KEEFHAVER, JR., IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

7)   **DECLARATION OF DAVID R. MARKHAM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND ATTACHED EXHIBIT A**

8)   **DECLARATION OF JAMES M. TREGLIO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND ATTACHED EXHIBITS 1-8**

__ BY U.S. MAIL:
I caused an envelope containing the above document addressed to the recipient set forth below, with postage thereon fully prepaid, to be placed in the United States mail at San Diego, California. I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence will be deposited with the U.S. Postal Service this same day in the ordinary course of business (C.C.P. Section 1013(a); 2015.5):

X BY ELECTRONIC TRANSMISSION OF THE "NOTICE OF ELECTRONIC FILING":
By electronically filing the document(s) through the Court's ECF filing system

Anthony L. Hall
Nevada Bar No. 5977
Dora V. Lane
Nevada Bar No. 8424
**HALE LANE PEEK DENNISON & HOWARD**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO          Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES

1   Phillip J. Eskenazi (admitted *pro hac vice*)
    Kevin D. Rising (admitted *pro hac vice*)
2   Christopher Blanchard (admitted *pro hac vice*)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
3   2029 Century Park East, Suite 2400
    Los Angeles, California 90067
4
    Robert B. Gerard
5   Nevada State Bar No.: 005323
    Lawrence T. Osuch
6   Nevada State Bar No.: 006771
    **GERARD & OSUCH, LLP**
7   2840 South Jones Boulevard
    Building D, Suite 4
8   Las Vegas, Nevada 89146
9   Walter Haines
    California State Bar No. 71075
10  **UNITED EMPLOYEES LAW GROUP, PC**
    65 Pine Avenue, #312
11  Long Beach, CA 90802
12
13  XX  (Federal): I declare that I am employed in the office of a member of the bar of this Court
        at whose direction the service was made, and that the foregoing is true and correct under
14      penalty of perjury.

15      Executed on January 2, 2008 at San Diego, California.

16
                                        James M. Treglio
17                                      CLARK & MARKHAM LLP

18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO      Case No. 3:07-CV-00253-LRH-RAM
CERTIFY CLASS, MEMORANDUM OF POINTS AND AUTHORITIES**